THE RHODE ISLAND LOCOMOTIVE WORKS *v.* THE EMPIRE LUMBER COMPANY *et al.*

1. According to the true intent and meaning of the act of 1881 (Code, §1955a) touching conditional sales of personal property, such a sale evidenced by contract in writing, executed and attested in the manner requisite to mortgages on personal property, is effectual to retain title in the vendor as against all creditors of the condi-

tional vendee except those who subsequently obtain liens before the vendor reclaims the property. But in order to affect such creditors as do obtain liens, if they themselves are in no default by failure to record where recording is necessary, the written contract of conditional sale must be recorded in conformity to the statutes applicable to the recording of mortgages on personal property. This is the general rule; but in the case of liens created by contract, actual notice of the vendor's rights by the junior lien creditor will dispense with recording the contract of conditional sale, just as such notice would dispense with recording a mortgage.

2. On the facts in the record, including the concession of there being no liens against the property, the court erred in sustaining the master's report.

May 2, 1893. Argued at the last term.

Before Judge ROBERTS. Dodge superior court. March adjourned term, 1892.

ELLIS & GRAY and DELACY & BISHOP, for plaintiff in error.

HILL, HARRIS & BIRCH, CLAUD ESTES, JOHN L. HOPKINS & SON and J. H. LUMPKIN, *contra.*

SIMMONS, Justice.

Two locomotives were purchased by the Empire Lumber Company from the Rhode Island Locomotive Works, under a written contract of conditional sale, reserving title in the vendor until the whole of the purchase money should be paid, and were placed upon the Macon & Dublin railroad and there used by the railroad company for the purpose of hauling logs for the lumber company, until taken charge of as a part of the latter's assets by a receiver appointed on the petition of certain of its creditors. The locomotive works filed an intervention and claimed title to the locomotives, a part of the purchase money being still unpaid. This claim was contested on the part of the other creditors, the latter contending that the reservation of title was ineffectual, because the contract was not recorded. The case was referred to a master, who reported that the failure of the vendor to record in time was fatal to its title, and vested title absolutely in the vendee, so far as these

creditors were concerned. It was conceded that none of the creditors had obtained liens against the property, and it did not appear that any of them had given credit upon the faith of the vendee's ownership of the property. There was a sign on each locomotive, which was attached to it at the time of the sale and which had ever since remained on it, stating that it was the property of the Rhode Island Locomotive Works; and this sign was in a conspicuous place where it could be read by persons standing on the ground. Various exceptions to the master's report were filed in the court below by the intervener, and the court dismissed them upon the ground that " the failure to record the contract retaining title vested the property in the lumber company."

The law providing for the record of contracts of this kind is to be found in the act of September 27th, 1881. Acts 1881, p. 143; Code, §1955(a). This statute is entitled, " An act to require the conditional sales of personal property to be evidenced in writing, and for other purposes," and provides, in the first section thereof, that "whenever personal property is sold and delivered, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise; and the written contract of every such conditional sale shall be executed and attested in the same manner as is now provided by existing laws for the execution and attestation of mortgages on personal property; provided, nevertheless, that as between the parties themselves the contract as made by them shall be valid, and may be enforced whether evidenced in writing or not." Section II provides "that the existing statutes and laws of this State in relation to the registration and record of mortgages on personal prop-

v 91-41

erty, shall apply to and affect all conditional sales of personal property as defined in the preceding section."

It will be seen that the first section, which requires that the contract shall be evidenced in writing and executed and attested in the manner prescribed, in order for the reservation of title to be valid as against third parties, does not say also that it shall be recorded. The provision as to recording is contained in the second section, and that section places the contract upon the same footing in this respect as a mortgage on personalty, and renders the effect of failure to record the same as it would be in the case of a mortgage. (*Cottrell* v. *Merchants Bank*, 89 *Ga.* 515; *Morton* v. *The Frick Co.*, 87 *Ga.* 232; *Cohen* v. *Candler*, 79 *Ga.* 429.) The failure to record a mortgage on personalty does not render it ineffectual as to all third persons, but simply postpones it to " other liens created or obtained, or purchases made prior to the record of the mortgage." (Code, §1957.) In *Cottrell* v. *Merchants Bank*, *supra*, an unrecorded reservation of title was held valid even as against a subsequent creditor without notice, who had given credit on the faith of the property and taken a mortgage thereon, his mortgage being unrecorded.

Prior to the statute referred to, it was not required that such a reservation should be in writing, or that notice should be given, to render it valid as against third parties. A parol reservation was good, not only against the vendee, but against all persons dealing with him. (*Goodwin* v. *May*, 23 *Ga.* 205.) And under the statute, it is still good as between the parties themselves. But the statute protects all third persons to the extent of requiring the contract to be evidenced in writing and witnessed by an attesting officer, in order to be good as against them; thus preventing frauds and perjury which might otherwise be practiced by debtors and others in collusion with them to defeat creditors who seek to sub-

ject to their claims property apparently belonging to the debtor. The provision as to notice, however, was for the benefit only of persons dealing with the vendee on the faith of his apparent ownership of the property, and such as obtain liens thereon. As we have seen, none of the creditors contesting the claim of the vendor in this case had obtained liens before the property was reclaimed, and so far as appeared, none of them were misled by the failure to record. The court below erred, therefore, in approving the report of the master, and in dismissing the execeptions thereto, on the ground that the failure to record vested title in the vendee.

In the case of *Steen & Marshall* v. *Harris*, 81 *Ga.* 681, relied on by counsel for the defendants in error, it was unnecessary to pass upon the effect of failure to record the contract reserving title. The evidence showing that the sale was rescinded and the rescission executed, at least in part, before it was sought to subject the property to the claim of an attaching creditor of the vendee, this court sustained the right of the vendor, notwithstanding the failure to record, and held that a verdict finding the property not subject should not be disturbed. What was said in that case about the effect of failure to record is therefore not binding upon us as authority in the present case.                    *Judgment reversed.*